UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CARMELO SOTO,

Plaintiff,

- against -

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-4631 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Carmelo Soto filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which had denied Plaintiff benefits. After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $161,670 in past-due benefits. Plaintiff now moves for $20,231.87 in attorney's fees pursuant to 42 U.S.C. § 406(b) ("Section 406(b)") for the work performed by his counsel, Howard D. Olinsky. For the reasons explained below, Plaintiff's motion is granted and Olinsky is awarded $20,231.87.

**BACKGROUND**

After Plaintiff was denied benefits at the agency level, he retained Howard D. Olinsky and filed this action on August 12, 2019. (Compl, Dkt. 1.) After Defendant filed the administrative transcript, (Administrative Tr., Dkt. 8), Plaintiff filed a motion for judgment on the pleadings, (Pl.'s Mot. J. Pleadings, Dkt. 9), Defendant filed a cross-motion, (Def.'s Cross-Mot. J. Pleadings, Dkt. 15), and Plaintiff filed a reply, (Pl.'s Reply, Dkt. 18). On September 30, 2020, the Court granted Plaintiff's motion, denied Defendant's cross-motion, and remanded to the SSA. (Mem. & Order, Dkt. 20.) In accordance with a stipulation between the parties as to attorney's fees,

(Stipulation, Dkt. 24), the Court awarded Plaintiff $5,250 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (01/13/2021 Dkt. Order; *see also* Stipulation, Dkt. 24 (specifying amount of the EAJA award).) On September 27, 2025, the SSA mailed Plaintiff a Notice of Award letter informing him that he would receive approximately $161,670 in past-due benefits, with 25%, $40,463.75, withheld as possible attorney's fees.[1] (Notice Award Letter, Dkt. 25-3, at 1–2, 4.) Plaintiff's counsel received notice of the award on October 14, 2025. (*See* Dkt. 25-3 (email notifying counsel of the award).)

By motion filed on October 24, 2025, (Pl.'s Mot. Att'y Fees, Dkt. 25), Olinsky now seeks $20,231.87 for work performed before this Court, (Affirmation Supp. Mot. Att'y Fees, Dkt. 25-1 ¶ 7.) Along with Plaintiff's motion, counsel submitted a fee agreement, demonstrating that Plaintiff retained Olinsky on a 25% contingency-fee basis, (Fee Agreement, Dkt. 25-2), and itemized time records, indicating that counsel and his paralegals spent a total of 30 hours litigating this matter before this Court, (Dkt. 25-4).

---

[1] The Notice of Award Letter does not explicitly state the total past-due benefits to which Plaintiff was entitled. Instead, the Notice of Award Letter states that Plaintiff would receive a check for $121,206.25, as "the money [Plaintiff was] due through August 2025," (Notice Award Letter, Dkt. 25-3, at 2), and separately notes that the SSA "withheld $40,463.75 from [Plaintiff's] past due benefits in case [the SSA] need[s] to pay [Plaintiff's] representative," (*id.* at 4). From this, the Court infers that the total amount awarded was $161,670 ($121,206.25 + $40,463.75). This inference is further supported by the fact that $40,463.75 is 25% of $161,670, which accords with the letter's note that the SSA "usually withhold[s] 25 percent of past due benefits in order to pay the approved representative's fee," (*id.*). Olinsky submitted in his affirmation that Plaintiff was awarded $161,855, (*see* Affirmation Supp. Mot. Att'y Fees, Dkt. 25-1 ¶ 4), but the Court disregards this $185 difference from the Court's calculation of the award amount as inadvertent and erroneous, and immaterial in any event.

**DISCUSSION**

## I. Timeliness

Motions for attorney's fees under Section 406(b) must be filed within the 14-day filing period prescribed by Federal Rule of Civil Procedure ("Rule") 54(d). *Sinkler v. Berryhill*, 932 F.3d 83, 86–89 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," *id.* at 88, and the law presumes that "a party receives communications three days after mailing," *id.* at 89 n.5 (citing *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011)). Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89 (citations omitted).

Plaintiff's counsel received the notice of benefits award on October 14, 2025. (*See* Fee Agreement, Dkt. 25-2.) This motion was filed on October 24, 2025, 10 days later. (Dkt. 25.) The motion was thus timely filed.

## II. Reasonableness of the Requested Fee

### A. Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) "the character of the representation and the results the representative achieved"; (2) "whether a claimant's counsel is responsible for undue delay," unjustly allowing counsel to obtain a percentage of

additional past-due benefits;[2] and (3) whether the requested amount is "so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 849 (citations omitted); *see also id.* at 849 n.2, 853. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

The windfall factor is not equivalent to the traditional lodestar inquiry, where the Court is called on to act as an arbiter of "reasonableness" between the "opposing interests of the prevailing plaintiffs and losing defendants." *Id*. at 854 (quoting *Wells v. Sullivan*, 907 F.2d 371 (2d Cir. 1990)). Rather, "courts must consider more than the de facto hourly rate," because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," *id.*; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *id.* at 855; (3) "the satisfaction of the disabled claimant," *id.*; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id*.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v.*

---

[2] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery." (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 791 (2002) (noting that "where the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court"))).

*Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients.").

**B. Application**

Here, Plaintiff retained Olinsky pursuant to a 25% contingency-fee agreement. (Fee Agreement, Dkt. 25-2.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Olinsky does not seek the full 25% of Plaintiff's past-due benefits; he requests only $20,231.87, which amounts to 12.5% of Plaintiff's past-due benefits. Plaintiff's attorneys and paralegals logged 30 hours representing Plaintiff, of which 23.1 hours were attorney time and 6.9 hours were paralegal time. (*See* Dkt. 25-5 (ledger of attorney time); Dkt. 25-6 (ledger of paralegal time).) When accounting for the paralegal time at $100 per hour[3]—i.e., subtracting 6.9 multiplied by $100—counsel is requesting $19,541.87 for 23.1 hours of work, which would be an effective hourly rate of $845.97 per hour. For the reasons explained below, the Court finds that amount to be reasonable in the context of this case.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. Here, counsel's brief was professional and effective, (*see* Pl.'s Mem. Supp. Mot. J. Pleadings ("Pl.'s Mem."), Dkt. 10), identifying the relevant infirmities upon which the Court ultimately granted Plaintiff's motion for judgment on the pleadings and remanded this action for further administrative proceedings, (*see* Mem. & Order, Dkt. 20). Plaintiff then received an award of past-due benefits and future benefits

[3] *See, e.g.*, *Saha v. Comm'r of Soc. Sec.*, No. 23-CV-2797 (PKC), 2026 WL 2389596, at *3 (E.D.N.Y. Aug. 17, 2026) (crediting paralegal time at $100 per hour and removing it from the calculation of effective hourly rate); *Logan v. Comm'r of Soc. Sec.*, No. 23-CV-1813 (PKC), 2026 WL 787870, at *1 (E.D.N.Y. Mar. 20, 2026) (same).

on remand. (*See* Notice Award Letter, Dkt. 25-3.) The Court finds that this factor does not warrant a downward adjustment.

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. Here, Olinsky was not responsible for any unreasonable delays that would warrant a downward adjustment. The SSA notified Plaintiff of a final denial of benefits on June 13, 2019, (*see* Dkt. 1-1 (notice of denial of benefits by SSA Appeals Council)), Plaintiff retained Olinsky to bring an action before this Court on August 9, 2019, (*see* Fee Agreement, Dkt. 25-2 (retainer agreement signed August 9, 2019)), and counsel filed the Complaint just three days later, on August 12, 2019, (*see* Compl., Dkt. 1). The only delays in the underlying matter are attributable to Defendant's three extension requests, which resulted in a 105-day delay. (*See* Dkts. 11, 12, 13.) Thus, the Court finds that this factor does not warrant a downward adjustment.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56.

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court believes that 30 hours was a reasonable amount of time to spend in this matter. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98. *Id.* at 854. Here, the transcript was 681 pages, (*see* Administrative Tr., Dkt. 8), Plaintiff's opening brief was 18 pages, (*see* Pl.'s Mem., Dkt. 10), and Plaintiff's counsel was also required to draft a reply brief, (*see* Pl.'s Reply, Dkt. 18). The amount of work expended here is comparable to that in *Fields* because, although

Olinsky had a shorter transcript to review in this case, he had to draft substantially more briefing, including a reply brief, unlike in *Fields* where no reply was needed. Furthermore, the effective hourly rate Olinsky requests is only $845.97, nearly half the hourly rate that the Second Circuit found justified in *Fields*. This factor does not suggest a windfall.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that Olinsky did not represent Plaintiff in front of the SSA before filing this suit. In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See id.* at 855. Here, Olinsky was not retained until after the agency review process was complete and Plaintiff sought to file this civil action. (*Compare* Dkt. 1-1 (June 13, 2019 notice of denial of benefits by SSA Appeals Council)), *with* (Fee Agreement, Dkt. 25-2 (retainer agreement signed August 9, 2019)).) Generally, where counsel "did not have the type of attorney-client relationship built over multiple rounds of representation before the agency and court that the Second Circuit highlighted in *Fields*," a slight downward adjustment to the award might be warranted. *See Casella v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-6414 (LDH), 2025 WL 4664739, at *4 (E.D.N.Y. July 10, 2025) (quoting *Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2023 WL 5310742, at *3 (E.D.N.Y. Aug. 17, 2023)). But here, given that the number of hours Olinsky worked was not greater than necessary and the effective hourly rate he requests is relatively low, the Court finds that this factor does not warrant a downward adjustment in this case. *See Tastan v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-1831 (NRM) (ARL), 2025 WL 1640539, at *4

(E.D.N.Y. Feb. 20, 2025) (finding no downward adjustment necessary where "the number of hours [counsel] spent was not greater than necessary and the de facto hourly rate is relatively low"); *Stovall v. Berryhill*, No. 16-CV-5129 (NG), 2022 WL 798160, at *3 (E.D.N.Y. Mar. 16, 2022) (finding no downward adjustment necessary where attorney who did not represent plaintiff before the SSA worked 31.3 hours).

With respect to "the satisfaction of the disabled claimant," *Fields*, 24 F.4th at 855, the Court presumes that Plaintiff is satisfied with the results, with no evidence to the contrary. *See Gray v. Comm'r of Soc. Sec.*, No. 20-CV-3916 (PKC), 2023 WL 3948796, at *4 (E.D.N.Y. June 12, 2023). Plaintiff received the past-due benefits he sought, and counsel was not responsible for any delays that might have warranted dissatisfaction. Therefore, this factor does not suggest that the requested fee constitutes a windfall. *See, e.g.*, *Hickey v. Comm'r of Soc. Sec.*, No. 18-CV-7053 (PKC), 2022 WL 2918234, at *3 (E.D.N.Y. July 25, 2022) (finding no downward adjustment warranted where there was no evidence of dissatisfaction and counsel achieved a favorable result without any requests for extensions).

Lastly, the Court addresses "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Fields*, 24 F.4th at 855. Here, as in *Fields*, the SSA denied the claim multiple times at the agency level. *See id.* at 856; (*see also* Pl.'s Mem., Dkt. 10 (describing multiple denials in front of the SSA)). Further, like *Fields*, "advancing the claim in the district court was not without effort," *see* 24 F.4th at 856; the parties fully briefed cross-motions on the pleadings, and did not stipulate to remand, (*see* Mem. & Order, Dkt. 20 (adjudicating the case after full briefing)). Accordingly, the Court finds that this factor does not suggest a windfall and does not warrant a downward adjustment.

For the reasons explained above, the Court finds the requested amount to be reasonable. Additionally, upon receiving the Section 406(b) award, Olinsky must remit the $5,250 received pursuant to the EAJA to Plaintiff.

**CONCLUSION**

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted, and Howard Olinsky is awarded $20,231.87. Upon receipt of this award from the Government, Olinsky shall promptly refund Plaintiff $5,250, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*Is/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2026
Brooklyn, New York